UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
JAMES FOULKE, Jr.,                          :
                                            :
                        Plaintiff,          :        Civ. No. 13-5458 (RBK) (KMW)
                                            :
        v.                                  :        **OPINION**
                                            :
RICO McCLOUD, et al.,                       :
                                            :
                        Defendants.         :
_____    :

**ROBERT B. KUGLER, U.S.D.J.**

## I.        INTRODUCTION

Plaintiff is proceeding through counsel with a civil rights complaint filed pursuant to 42

U.S.C. § 1983.  On January 7, 2014, the Court screened the complaint pursuant to 28 U.S.C. §

1915A and permitted the complaint to proceed in part.  Presently before the Court are two

motions for summary judgment.  The first is filed by defendant County of Gloucester

(hereinafter the "County").  Defendants Reco Mcleod[1] and Michael Tull have separately filed a

second motion for summary judgment.  For the following reasons, the motions for summary

judgment will be granted.

## II.        LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted

"if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d

Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and

_____

[1] Defendant Reco McCleod notes that the spelling of his name was incorrectly spelled "Rico McCloud" in the complaint.

1

inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof  . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial.  *See Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).  "[U]nsupported allegations . . .  and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.")

### III.    BACKGROUND

As the Court noted in its screening opinion, this case centers around plaintiff's allegations that McLeod and Tull, who are correctional officers at the Gloucester County Jail, brutally beat plaintiff in September, 2011, causing him to suffer an injury to his forearm/wrist.  Plaintiff's allegations gave rise to an excessive force claim against McLeod and Tull and a failure to train claim against the County that were permitted to proceed past screening.

In support of their motion for summary judgment, the defendants rely on previous sworn statements made by plaintiff with respect to how he sustained his injury. On November 4, 2011, plaintiff was charged with aggravated assault and conspiracy. Plaintiff purportedly conspired with correctional officer Thomas Hahn to assault another inmate, Patrick Georgette. (*See* County Mot. S.J. (hereinafter "Dkt. No. 8-1") Ex. 2.) Before plaintiff was charged, the assault on Georgette was investigated by the Gloucester County Prosecutor's Office. In connection with that investigation, plaintiff agreed to conduct an interview under oath with investigators on September 26, 2011. (*See* Dkt. No. 8-1 p. 23-215.) At that sworn interview, plaintiff admitted to assaulting Georgette. (*See id.* at p. 30-31.) Furthermore, he explained to investigators that this assault stopped as plaintiff's hands hurt because he had broken his wrist. (*See id.* at p. 32.) Plaintiff stated during his sworn interview that "Tommy" put him up to assaulting Georgette, a reference to correctional officer Thomas Hahn. (*See id.* at p. 107-08.)

The defendants also have submitted some of plaintiff's medical records to support their claim that plaintiff did not suffer a broken wrist at the hands of McLeod and Tull, but rather during his assault of Georgette. The medical records state that plaintiff was involved in an altercation with another inmate around 12:00 or 1:00 p.m. on September 14, 2011. (*See* County of Gloucester Mot. S.J. Reply (hereinafter "Dkt. No. 16") at Exs. 4 & 5.) Plaintiff was seen by medical on September 15, 2011 and complained of pain to his hand and wrist. (*See id.*) Plaintiff was then sent to the hospital emergency room for an x-ray which revealed the wrist injury. (*See id.* Ex. 5.) Plaintiff was then given a splint and a prescription for the pain. (*See id.*)

Plaintiff opposes the motions for summary judgment. Plaintiff admits in his response in opposition that it can be inferred from his sworn September 26, 2011 statement to investigators that he told them that he fractured his wrist during the assault of Georgette. (*See* Dkt. No. 15 at

p. 1.)  However, plaintiff argues that he only made this inference because he was fearful of the repercussions if he implicated McLeod and Tull as the actual culprits who broke his wrist. Accordingly, plaintiff attached an affidavit to his response to the motions for summary judgment that attempts to explain his reasons for not being truthful during his sworn statement with respect to how he broke his wrist.  The affidavit states in part:

> 2.  I realize that on September 26, 2011, I gave a sworn statement to county detectives, and in that statement, I said that, "I broke my wrist."
> 3.  However, it is not accurate to conclude that I broke my wrist as a result of striking Patrick Georgette at about 4:00 p.m. on September 14, 2011.
> 4.  I believe that my wrist was broken on September 14, 2011, when corrections officers Reco Mcleod and Michael Tull beat me, after lock-up occurred at 11:00 p.m.
> 5.  I did not tell the county detectives that I had been beaten on September 14, 2011, while I was an inmate at the Gloucester County Jail, by corrections officers, Reco McLeod and Michael Tull.  I was afraid that if I revealed that I had been beaten by corrections officers, I would have been subjected to worse punishment, if I had been returned to the Gloucester County jail after I gave the statement to the county detectives.

(Pl.'s Objections Mots. S.J. (hereinafter "Dkt. No. 15") at p. 3.)

## IV.    DISCUSSION

A. <u>County of Gloucester's Motion for Summary Judgment</u>

Plaintiff's failure to train claim against the County proceeded past screening.  To satisfy liability under § 1983 under a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact.'"  *Connick v. Thompson*, - U.S. -, 131 S. Ct. 1350, 1359 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion)).  "Failure to train . . . municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  *Kline ex rel.*

*Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007) (citations omitted).  In this case, however, plaintiff did not allege a pattern of violations.  Nevertheless, the failure to train claim against the County was permitted to proceed past screening under a single violation theory.  Indeed, the Supreme Court has noted in the context of a failure to train context that there is the potential to sustain a failure to train claim:

> in a narrow range of circumstances, [whereby] a violation of federal rights may be a highly predicable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations.  The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to choice-namely, a violation of a specific constitutional or statutory right.  The high degree of predictability may also support an inference of causation – that, the municipality's indifference led directly to the very consequence that was so predictable.

*Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409-10 (1997).

The County's motion argues that there is no material issue of fact that there was even a single violation of plaintiff's federal rights.  The County claims there is no material issue of fact that plaintiff was beaten by correctional officers McLeod and Tull.  Thus, if there is no material issue of fact with respect to McLeod and Tull beating plaintiff which caused his broken wrist, it follows that the County could not be liable under a failure to train theory since there would be no constitutional violation in the first place.

In support of its argument, the County notes that plaintiff stated in a sworn statement that he broke his wrist during his assault of Georgette, not from an injury sustained by McLeod and Tull.  The County claims that plaintiff's affidavit is a "sham affidavit" as it attempts to create a material issue of fact that McLeod and Tull injured his wrist, despite plaintiff's previous sworn statements to the contrary.

> A sham affidavit is a contradictory affidavit that indicates only that
> the affiant cannot maintain a consistent story or is willing to offer a
> statement solely for the purpose of defeating summary judgment.
> A sham affidavit cannot raise a genuine issue of fact because it is
> merely a variance from earlier deposition testimony, and therefore
> no reasonable jury could rely on it to find for the nonmovant.

*Jimenez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 252); *see also Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("The 'sham affidavit' doctrine refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony.") (internal quotation marks and citation omitted).  Thus, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  *Baer*, 392 F.3d at 624 (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)).

The Third Circuit has adopted a flexible approach in determining the applicability of the "sham affidavit" doctrine.  *See Jimenez*, 503 F.3d at 254.  Under this flexible approach, the Third Circuit has noted that not all contradictory affidavits are "sham affidavits."  Indeed:

> [w]hen there is independent evidence in the record to bolster an
> otherwise questionable affidavit, courts generally have refused to
> disregard the affidavit.  Such corroborating evidence may establish
> that the affidavit was "understandably" mistaken, confused, or not
> in possession of all the facts during the previous deposition.  We
> have also held that an affiant has the opportunity to offer a
> "satisfactory explanation" for the conflict between the prior
> deposition and the affidavit.  When a party does not explain the
> contradiction between a subsequent affidavit and a prior
> deposition, it is appropriate for the district court to disregard the
> subsequent affidavit and the alleged factual issue in dispute as a
> "sham," therefore not creating an impediment to the grant of
> summary judgment based on the deposition.

*Id.* (internal citations omitted); *see also David's Bridal, Inc. v. The House of Brides, Inc.*, No. 06-5660, 2010 WL 715437, at *5 (detailing the Third Circuit's flexible approach to the "sham affidavit" doctrine).

Plaintiff has not pointed to any independent evidence in the record that would indicate that he suffered a broken wrist at the hands of McLeod and Tull rather than during his assault on Georgette.[2]  Indeed, the independent evidence in the record indicates that plaintiff's injuries occurred as a result of his clash with fellow inmate Georgette.  The medical records provided by the County reference plaintiff's altercation with another inmate on September 14, 2011.  They do not reference any type of altercation between plaintiff and correctional officers to bolster the claim made in his affidavit that he was beaten up by them at around 11:00 p.m. on September 14, 2011, immediately prior to being seen by medical personnel for his wrist injury.  Accordingly, no independent evidence has been presented in the record to support plaintiff's theory set forth in his affidavit.

Plaintiff has also not demonstrated a plausible explanation for the conflict between his sworn testimony and his affidavit.  *See Baer*, 392 F.3d at 624 (noting that a party cannot create a material issue of fact by filing an affidavit disputing his own sworn statement without demonstrating a "plausible" explanation for the conflict.) (citing *Hackman*, 932 F.2d at 241).  As previously described, plaintiff claims that he did not implicate McLeod and Tull during his sworn testimony for breaking his wrist for fear of reprisals he might face upon his return to the Gloucester County Jail.  For the following reasons, however, the Court finds that this is not a

---

[2] Importantly, it is worth noting that the County filed its motion for summary judgment immediately after the Court screened the complaint and before any discovery in this case took place.  Nevertheless, plaintiff does not indicate in opposing the motions for summary judgment that the motions are premature or that he needs discovery to justify his opposition to the motion for summary judgment pursuant to Rule 56(d).

plausible explanation to explain away his sworn testimony and find that his affidavit creates the necessary material issue of fact regarding how and by whom plaintiff was injured.

First, plaintiff was told by a detective conducting the sworn interview that he would not be returning to Gloucester County Jail.  (*See* Dkt. No. 8-1 at p. 58 ("Well you're not going back there.  You're being transferred.  You're not going back in that jail.  You're going to be transferred to another jail.")  Plaintiff was told that he would be transferred to Cumberland County Jail.  (*See id.* at p. 128.)  Furthermore, while plaintiff stated that he was afraid of reprisals if he implicated McLeod and Hull as the culprits who broke his wrist, plaintiff had no trouble implicating another correctional officer, Thomas Hahn.  Indeed, plaintiff told the detectives during his sworn interview that Hahn was the officer who conspired with him and told him to assault inmate Georgette.  Finally, plaintiff's sworn testimony also illustrates that plaintiff had no fear in telling investigators that McLeod was rough with him on other occasions.  Indeed, plaintiff told the investigators about an incident with McLeod at one point where McLeod "[s]lammed [his] head into the fucking elevator and shit."   (*Id.* at p. 114.)

Based on these circumstances, plaintiff's reason of fear of reprisals to explain away his sworn testimony that he injured his wrist assaulting Georgette as opposed to at the hands of McLeod and Tull is not satisfactory or plausible.  Plaintiff's sworn statement indicates that he implicated other correctional officers and even testified that McLeod had been rough with him on another occasion.  Furthermore, plaintiff's purported reason of fear if he returned to Gloucester County Jail is negated by the fact that he was told that he would not be sent back there upon completion of his sworn interview on September 26, 2011.

Thus, plaintiff's affidavit is considered a "sham affidavit."  It does not create a material issue of fact in light of plaintiff's previous sworn testimony that contradicts his affidavit.  *See*

*Jimenez*, 503 F.3d at 253 (noting that a "sham affidavit" does not create a genuine issue of fact). Plaintiff's affidavit is the sole piece of evidence that he relies on in attempting to defeat the County's motion for summary judgment.  As the affidavit does not create a material issue of fact as to the underlying constitutional violation, he fails to show that there is a material issue of fact with respect to his failure to train claim against the County.  Accordingly, the County's motion for summary judgment will be granted.

B.  <u>McLeod and Hull's Motion for Summary Judgment</u>

Defendants McLeod and Hull have also filed a motion for summary judgment.  The Court permitted plaintiff's excessive force claim against McLeod and Tull to proceed past screening.

For a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must show that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm.  *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  McLeod and Hull adopted all of the legal arguments set forth by the County's motion for summary judgment.  As illustrated above, plaintiff has failed to show a material issue of fact that McLeod and Tull broke his wrist through using excessive force.  This injury was the basis of his excessive force claim against them.  His affidavit does not create a material issue of fact.  It is considered a "sham affidavit" in light of his previous sworn testimony in which plaintiff explained that his wrist was broken in his assault on Georgette, not from an attack by correctional officers McLeod and Tull.  Accordingly, summary judgment shall also be awarded in favor of McLeod and Hull on plaintiff's excessive force claim.

## V.      CONCLUSION

For the foregoing reasons, the County's as well as McLeod and Tull's motions for summary judgment will be granted.  An appropriate order will be entered.

DATED:  September 15, 2014

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
